A97A0002. ALLEN DECORATING, INC. v. OXENDINE et al.
(483 SE2d 298)

BIRDSONG, Presiding Judge.

Appellant Allen Decorating, Inc. appeals from the order granting summary judgment to appellees Lee Wall Oxendine and Oxendine & Associates, P.C. Appellant brought suit against appellee attorney and her law firm averring legal malpractice and fraud; appellees filed an $8,940 counterclaim for legal services previously billed to appellant

plus interest on the unpaid account.

Appellant corporation is engaged primarily as a commercial painting contractor. In 1980 its corporate president, Ken Allen, became involved in a contested divorce action and sought assistance from attorney Mike Broadbear. Following the divorce, Allen was indebted to Broadbear for $10,000 in legal fees. On July 11, 1990, Allen elected to turn over all corporate accounts to Broadbear so the latter could pursue them to collection and apply any collection proceeds in satisfaction of Allen's indebtedness. As time progressed, it appeared that Broadbear was too busy to pursue collection of appellee's various accounts. Accordingly, approximately two years later, Allen retrieved his files, and several months later, on March 31, 1992, met with appellee Lee Oxendine and delivered to her four corporate accounts of a total amount exceeding $150,000. In April 1992, appellee Oxendine filed notices of appearance in collection cases pertaining to two of these accounts. In June 1992, appellee Oxendine filed applications for leave of absence in these two suits. The record, however, reveals that from April 1992 to December 1993, appellee Oxendine sent Allen more than 15 letters informing him of the need to sign a contract for legal services, and in several of these letters appellee expressly wrote that the contract must be signed before she could represent Allen or act in his behalf as his counsel. Allen, however, testified by deposition, that he had never received any of these letters until he ultimately retrieved his file from appellee Oxendine. In any event, Allen failed to sign the professional services contract, and in June 1994, appellee Oxendine filed a motion to withdraw as Allen's counsel. Ultimately, appellee Oxendine withdrew as counsel regarding all of appellant's claims.

The trial court issued a detailed order granting appellees summary judgment. In that order the trial court summarized the operative facts of this case as follows: Appellant is a corporation engaged in commercial painting; it is solely owned by Allen. Appellant corporation initiated three lawsuits to recover money allegedly owed it pursuant to painting contracts, and had asserted a counterclaim in another suit brought against it by a contractor. These suits were: Allen Decorating, Inc. v. Traylor Brothers, Inc.; T. H. Taylor v. Kenneth Allen d/b/a Allen Decorating, Inc.; Allen Decorating, Inc. v. Barge-Wagener, Inc.; and, Allen Decorating, Inc. v. Thatcher, Haynes, Kaufman (THK). After discharging Broadbear as counsel, appellant contacted attorney Oxendine regarding representing him in these suits. (For purposes of the summary judgment motion, appellees conceded before the trial court that appellant had employed appellees in regard to these claims.) Approximately two years thereafter, appellant dismissed Oxendine and hired a third attorney to represent him in the instant case.

Appellant's malpractice claims are based upon allegations of deficient representation by appellees in the above four claims cases. (a) Attorney Broadbear represented appellant in the Traylor Brothers, Inc. case until March or April 1992; attorney Oxendine entered an appearance on behalf of appellant in this case in April 1992. Attorney Oxendine withdrew from the case in June 1994. This case is still pending in Fulton County State Court as Civil Action Case No. 90VS0015963. No attorney has entered an appearance in this case since appellant Oxendine withdrew. (b) Attorney Broadbear represented appellant when T. H. Taylor, Inc. filed suit against Kenneth Allen d/b/a Allen Decorating, Inc. Appellant filed a counterclaim. Subsequently Allen filed a Chapter 7 bankruptcy and the T. H. Taylor claim was automatically stayed until January 1991; the case was closed without prejudice in February 1991. Over a year later, appellant retained appellees and appellee Oxendine filed a notice of appearance in superior court (Civil Action No. 90-A-03797-4). Appellee Oxendine withdrew from the case in June 1994. (c) In June 1991, attorney Broadbear represented appellant with respect to its breach of contract claim against Barge-Wagener, Inc. However, Broadbear filed no suit in this matter. In March or April 1992, appellant sought representation from appellees regarding this claim. In April 1994, appellee Oxendine improperly filed suit on behalf of appellant in Fulton County Superior Court; in May 1994, Barge-Wagener was served properly in Cobb County. In November 1994, appellee Oxendine's motion to withdraw from this case was granted. Although the Barge-Wagener claim remains pending, no attorney has entered an appearance in the case for appellant and no motion has been filed to transfer the case to the Cobb County Superior Court. (d) In 1989 a contract dispute arose between appellant and THK; attorney Broadbear filed a suit for damages against THK in behalf of appellant in superior court (Civil Action No. D-86029K17-415). In October 1991, THK filed a motion to dismiss the claim for failure of appellant to engage in arbitration pursuant to the terms of the contract and the order of the superior court. The case was dismissed without prejudice in December 1991. Appellee Oxendine received the case file in March 1992 but did not refile suit against THK prior to withdrawing from all of appellant's other pending cases.

Regarding appellant's claim of fraud against appellees, the trial court found the following: In June 1992, appellee Oxendine advised Allen that he might have a viable claim due to Broadbear's alleged mismanagement of the THK case. Appellee Oxendine advised Allen that a malpractice claim against attorney Broadbear was appellant's strongest case and recommended that course of action be pursued to the exclusion of the other contract claims. The trial court found that Allen "speaking for the corporation as its president, consented to that

strategy." In October 1992, appellee Oxendine allegedly received a purported offer of $495,000 in settlement of the Broadbear malpractice claim; this offer reflected it was tendered on behalf of VASA North Atlantic Insurance Company (VASA) by John Brazell in his capacity as a claims adjuster. Allen testified, by way of deposition, that on October 23, 1992, he received a "page" call from appellee Oxendine and that when he returned her call she informed him of an oral $495,000 settlement offer by the insurance company. It was approximately one month after October 23, 1992, when Allen received the offer in writing. There also is entered in the record letters from Allen, dated in March 1993, requesting appellee Oxendine to accept the offer and offering to give Oxendine a fee of $95,000, and a subsequent letter, dated October 13, 1993, purporting to be from appellee Oxendine to Allen advising that the VASA offer "on its face does not appear legitimate." Appellee Oxendine did not attempt to contact Brazell or VASA either to confirm, refute or accept the offer; rather in May 1993, Oxendine wrote attorney Broadbear a letter demanding that he settle the malpractice claim against him for $64,000, the amount claimed in the complaint filed against THK. She testified, by deposition, that this latter action was taken to give attorney Broadbear notice of the malpractice claim against him and was with Allen's knowledge. Attorney Broadbear responded, through his attorney, by letter of July 1993, denying liability. On October 22, 1993, appellee Oxendine wrote a letter addressed to VASA accepting the purported $495,000 settlement offer of October 7, 1992. In December 1993, appellee Oxendine drafted a complaint against VASA to enforce compliance by VASA with the settlement agreement; this complaint was never filed. In January 1994, appellant retained attorney Phears to investigate the VASA settlement offer; Phears provided a VASA professional liability analyst with a copy of the purported settlement offer, the demand letter of appellee Oxendine to VASA, and a copy of a VASA policy alleged to be the policy insuring attorney Broadbear. Thereafter, the VASA analyst sent a letter to appellee Oxendine informing her that he had been contacted by attorney Phears on behalf of Allen, and that Phears recently had been retained by Allen to investigate the offer of settlement from VASA. The analyst further advised that investigation revealed that VASA had never authorized the purported $495,000 settlement, VASA does not insure attorney Broadbear (Broadbear is insured by The Home Insurance Company), John Brazell has not been and is not employed by VASA, and that a search of VASA files reveals that letter of appellee Oxendine, purporting to accept the settlement offer of $495,000, has never been received. At least during the period of February 1993 to February 1994, appellee Oxendine was insured by VASA. Allen denies having received by mail the numerous letters

from appellee Oxendine pertaining to the signing of a fee contract or any letters regarding the validity of the VASA settlement offer letter. *Held*:

1. Regarding the fraud claim, Allen testified in his deposition that, other than waiting for the settlement check and making plans how he "might spend it," he never entered into any contracts or other legal commitments in reliance on the receipt of the VASA settlement offer. The tort of actual fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. *Sears Mortgage Corp. v. Leeds Bldg. Products*, 219 Ga. App. 349, 351 (3) (464 SE2d 907). The record contains no admissible evidence establishing damage to the appellant within the meaning of *Sears*, supra, arising from the false misrepresentation allegedly made by appellee Oxendine. Thus, appellees demonstrated by the record that there exists no evidence sufficient to create a jury issue as to at least one of the essential elements of appellant's fraud claim. For an action for fraud to survive a summary judgment motion, there must be some evidence from which a jury could find each element of the tort. Id. Appellees carried their burden under *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) by showing by the record that there existed an absence of evidence to support the non-movant's case. At this point appellant could no longer rest on his pleadings or on generalized allegations but was required to point to specific evidence giving rise to a triable issue. Id.; see *Precise v. City of Rossville*, 261 Ga. 210, 212 (3) (403 SE2d 47). Appellant failed to carry this burden. Appellant's contentions on appeal regarding the existence of a triable issue of fraud are without merit; the trial court did not err in granting summary judgment on the fraud claim.

2. In a legal malpractice action, the client carries the burden of establishing three elements: (a) employment of the defendant attorney; (b) failure of the attorney to exercise ordinary care, skill and diligence; and (c) that such negligence was the proximate cause of damage to the plaintiff. *Mauldin v. Weinstock*, 201 Ga. App. 514, 518 (4) (411 SE2d 370). "[I]n a suit for legal malpractice, proof that the attorney's negligence proximately caused the client's harm is necessary for recovery." *Whitehead v. Cuffie*, 185 Ga. App. 351, 352 (364 SE2d 87). Where the cause(s) of action underlying the malpractice claim remain pending, plaintiff cannot prove the required element of damage because the action may terminate favorably for the client. Id. Accordingly, in this case, appellant cannot maintain any viable malpractice claim based on assertions of appellees' professional negligence arising from the conduct of suits still pending judicial resolution. Additionally, " '[a] client suing his attorney for malpractice not only must prove that his claim was valid and would have resulted in

a judgment in his favor, but also that said judgment would have been collectible in some amount, for therein lies the measure of his damages.'" *Perry v. Ossick*, 220 Ga. App. 26, 29 (467 SE2d 604). The trial court found "no evidence in the record which shows that the [appellant] would have obtained judgments in its favor [as to] any of its claims." Based on our independent review of the record, we find the trial court did not err in its finding; the record does not contain a scintilla of evidence to show that appellant would have obtained a favorable judgment as to any of its claims. For these reasons, the trial court did not err in granting summary judgment in favor of appellees. Further, based on appellees' professional recommendation, appellant consented to the trial strategy of pursuing the malpractice claim and to forego actively pursuing the four underlying contracts claims. "'There can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment.'" *Hudson v. Windholz*, 202 Ga. App. 882, 886 (3) (416 SE2d 120). This Court will not hold an attorney liable for malpractice based merely on the attorney's choice of trial tactics or strategy or the good faith exercise of professional judgment. See *Hudson*.

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED FEBRUARY 13, 1997 —
RECONSIDERATION DENIED MARCH 4, 1997 —

*Richardson & Chenggis, George G. Chenggis*, for appellant.
*Hawkins & Parnell, Christine L. Mast, H. Lane Young II*, for appellees.