## A01A0991. DYER v. HONEA et al.
## A01A0992. HONEA v. DYER.
## A01A0993. BAILEY v. DYER.
### (557 SE2d 20)

MIKELL, Judge.

Pursuant to a contract executed on September 25, 1995, Hal C. Dyer purchased Joel's Restaurant & Catering ("the restaurant") in Gwinnett County for $60,000. The restaurant was owned by Joel's Fine Foods, Inc. ("JFFI"), a corporation closely held by Joel Honea ("J. Honea") and his father, Robert Honea ("R. Honea"). The closing was handled by the Honeas' long-time counsel and JFFI's registered agent, Wayne A. Bailey. During the closing, J. Honea and R. Honea each executed an affidavit averring that there were no liens or encumbrances against the restaurant. Dyer subsequently discovered numerous liens against JFFI and a security interest in the restaurant's equipment. He also determined that profit and loss statements on which he relied in making the purchase were inaccurate. After borrowing money to keep the restaurant afloat, Dyer finally closed it in December 1995 and sold its assets for $6,400.[1]

Dyer then sued J. Honea, R. Honea, JFFI, Bailey, and Leslie J. Knight. Dyer alleged that Knight, a friend of J. Honea, represented himself as J. Honea's accountant and showed him financial data supporting the profit and loss statements at issue. Dyer further alleged that JFFI, through the Honeas, as well as the Honeas individually, intentionally misrepresented the restaurant's financial condition and that those misrepresentations induced Dyer to purchase the restaurant; that the Honeas, JFFI, and Knight conspired to defraud him; and that the corporate veil of JFFI should be pierced to permit holding the Honeas personally liable. In addition, Dyer asserted a breach of contract claim against the Honeas and JFFI based on their alleged failure to satisfy the restaurant's debts.

Finally, Dyer asserted a legal malpractice claim against Bailey. Dyer contended that Bailey persuaded him to discontinue using his own attorney and to retain Bailey to prepare the sales contract and the remainder of the closing documents. Dyer further alleged that Bailey should have known of the existence of the lien against the equipment and should have made Dyer aware of it. In support of this claim, Dyer attached the affidavit of George T. Smith, who concluded that Bailey had violated various Canons of Ethics, Directory Rules, and Standards of Conduct promulgated by the State Bar of Georgia in his representation of Dyer.

Dyer sought punitive damages against all defendants for the al-

---

[1] The evidence shows that J. Honea had valued the business inventory at $52,696, but the sales contract failed to assign a value to the inventory.

leged fraud and conspiracy. The Honeas and JFFI, Bailey, and Knight each moved for summary judgment on all issues. The trial court granted Knight's motion, ruling that Dyer failed to offer credible evidence of Knight's fraud or his knowledge of any fraud. In Case No. A01A0991, Dyer appeals, and we affirm, but for the reason that Dyer failed to show justifiable reliance as a matter of law. The trial court denied the motion filed by the Honeas and JFFI. Only R. Honea appeals from that order. That case is docketed as Case No. A01A0992, and we affirm in part and reverse in part. The trial court also denied Bailey's motion, ruling that genuine issues of fact remained. Case No. A01A0993 is Bailey's appeal, and we affirm.

### Case No. A01A0991

1. In his first enumeration of error, Dyer asserts that the trial court erred in granting summary judgment to Knight because material issues of fact remain on the claim of fraudulent misrepresentation. We disagree.

To prevail on summary judgment, the moving party must show that no genuine issues of material fact remain to be tried and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[2] On summary judgment, we must construe the evidence and all reasonable inferences and conclusions that may be drawn from it most favorably to the nonmovant.[3] So viewed, the evidence relevant to Dyer's claims against Knight shows the following: Knight operated a tax return preparation service located in the same shopping center as the restaurant. He had befriended J. Honea and permitted J. Honea to utilize his secretary and office equipment. Knight's secretary typed the profit and loss statements that J. Honea showed to Dyer when the two first met on August 2, 1995, to discuss purchasing the restaurant. The statements consisted of brief, one-page summaries of the profits and losses of the corporation for the years 1993 and 1994, as well as the last quarter of 1992. Dyer deposed that at the meeting, J. Honea "suggested that we get together with his accountant . . . and I could ask the questions of the man who prepared" the statements.

On or about August 6, 1995, Dyer met with J. Honea and Knight. According to Dyer, Knight showed him documentation supporting the profit and loss statements and claimed that he had prepared the documents. Dyer deposed that Knight vouched for the profits and said the restaurant was a good business. Knight, however, deposed that he had never prepared any financial documents for the restau-

---

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[3] *Chiaka v. Rawles*, 240 Ga. App. 792 (525 SE2d 162) (1999).

rant and did not review the documents at issue with Dyer. Knight claimed that he was unaware of the nature of the documents until he was sued.

Christine Sandquist, a waitress who was working at the restaurant when the meeting took place, deposed that before Dyer arrived, J. Honea and Knight were reviewing different financial statements with "different bottom line figures" and deciding which statement to show Dyer. However, on cross-examination, the waitress admitted that she was not paying close attention, did not hear any of their conversation, and did not know whether the different numbers represented different years.

As the moving party on a motion for summary judgment, a defendant may pierce the plaintiff's pleadings by demonstrating that there is no issue of material fact as to at least one essential element of the plaintiff's prima facie case.[4] The five elements essential to a tort suit for damages resulting from a material misrepresentation constituting fraud are: (1) that the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them intending to deceive the plaintiff; (4) that the plaintiff justifiably relied on the representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.[5] Accordingly, to survive summary judgment on his fraud claim against Knight, Dyer had to present some evidence of justifiable reliance.[6] This he did not do.

> In order for a genuine issue of material fact to exist as to justifiable reliance, there must be some evidence that the [plaintiff] exercised [his] duty of due diligence to ascertain the truth of the matter and to avoid damage. Although questions of due diligence often must be resolved by the trier of fact, that is not always the case. A party may fail to exercise due diligence as a matter of law.[7]

Assuming, without deciding, that Sandquist's deposition testimony raises an inference that Knight misrepresented the profitability of the restaurant, Dyer's fraud claim still fails, as he produced no

---

[4] *Garrett v. NationsBank*, 228 Ga. App. 114, 115 (491 SE2d 158) (1997).

[5] *GCA Strategic Investment Fund v. Joseph Charles & Assoc.*, 245 Ga. App. 460, 463-464 (3) (537 SE2d 677) (2000).

[6] *Hanlon v. Thornton*, 218 Ga. App. 500, 501 (1) (462 SE2d 154) (1995); *Jones v. Cartee*, 227 Ga. App. 401 (489 SE2d 141) (1997); *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296 (427 SE2d 789) (1993); *English Restaurant v. A. R. II, Inc.*, 194 Ga. App. 639, 641 (1) (391 SE2d 462) (1990).

[7] (Citation omitted.) *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 360 (4) (518 SE2d 154) (1999).

evidence that his reliance on any alleged misrepresentation was reasonable. Dyer admitted that he conducted only a cursory review of the documents because he was "not great with figures" and it was "much easier to read" the one-page summaries. Despite his acknowledged difficulty comprehending financial statements, Dyer deposed that he neither requested copies of the documents nor sought out an accountant to review them. The evidence demonstrates conclusively that he took no action to independently verify the accuracy of the data allegedly presented by Knight. Such blind reliance precludes his fraud claim as a matter of law.[8]

2. Dyer next contends that material fact issues remain as to whether Knight conspired with J. Honea and R. Honea to conceal the true financial condition of the restaurant. However, as Dyer's conspiracy claim is dependent upon the viability of his fraud claim, it too must fail.

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means."[9] "The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage."[10] It follows that the trial court did not err in granting summary judgment to Knight on Dyer's conspiracy claim.

## Case No. A01A0992

3. Dyer asserted claims of fraudulent misrepresentation, breach of contract, conspiracy, and piercing the corporate veil against R. Honea. On appeal from the order denying him summary judgment, R. Honea raises eight enumerations of error.

(a) First we address the fraud claim based on oral misrepresentations allegedly made by R. Honea before the closing. Viewed most favorably to Dyer, the evidence shows that R. Honea told Dyer that J. Honea had done "great things" with the restaurant and that it should continue to be "a very profitable business." Dyer asserted that R. Honea knew or should have known that his representations were false because he[11] had made loans totaling $92,972.98 to JFFI from 1992 through 1995 and he was JFFI's majority shareholder. Even assuming these representations were knowingly false and that they induced Dyer into purchasing the restaurant, Dyer is estopped from

---

[8] *Jones v. Cartee*, supra, 227 Ga. App. at 406; *Consulting Constr. Corp. v. Edwards*, supra, 207 Ga. App. at 298 (1).

[9] (Punctuation omitted.) *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297 (1) (443 SE2d 833) (1994).

[10] *Bell v. Sasser*, 238 Ga. App. 843, 852 (3) (520 SE2d 287) (1999).

[11] Individually or through his corporation, Robert K. Honea, Inc.

proving that he reasonably relied on them by the merger clause contained in the parties' contract.

A plaintiff claiming that he was fraudulently induced into entering into a contract may elect one of two remedies: affirm the contract and sue to recover damages for its breach or rescind the contract and sue in tort to recover damages for fraud.[12] If the party elects to affirm the contract, the merger clause estops him from asserting that he relied upon antecedent oral representations.[13] Dyer claims that after discovering the outstanding liens against the restaurant and the discrepancies in the sales figures, he demanded rescission of the contract. No such demand appears in the record.[14] In any event, Dyer failed to allege a cause of action for rescission in either the original complaint or the amended complaint. Instead, he sought damages flowing from the alleged fraud. Such action "constituted an election of remedies and a waiver of any rescission claim."[15] Accordingly, Dyer cannot recover based on any alleged oral representation preceding the execution of the contract.

(b) We next consider the denial of summary judgment to R. Honea on the fraud claim arising out of his execution of an affidavit at closing stating that there were no liens, security interests, or corporate debts affecting the restaurant. The affidavit reflects that it was offered "for the specific purpose of inducing" Dyer to purchase the restaurant. Therefore, we hold that it was made a part of the contract. Consequently, Dyer's fraud claim based on misrepresentations contained in this document is not barred by the merger clause. "Generally, false representations that induce the party to enter into the contract are merged through the contract merger language, but since the same misrepresentations were made as part of the contract, there was no merger."[16] Nevertheless, Dyer's fraud claim fails, as he failed to exercise due diligence to determine if any liens were of record prior to closing.[17] Dyer admitted that he did not conduct a public records search, which would have revealed numerous state Department of Revenue liens as well as a UCC financing statement securing an interest in the restaurant's equipment.

Summary judgment for the defendant is appropriate in a suit al-

---

[12] *Merritt v. State Farm &c. Ins. Co.*, 247 Ga. App. 442, 447 (2) (544 SE2d 180) (2000).

[13] *Markowitz v. Wieland*, 243 Ga. App. 151, 153 (1) (532 SE2d 705) (2000).

[14] The only evidence that rescission was even discussed is a letter from Bailey to Dyer's counsel dated January 19, 1996, stating that his "client does not desire to rescind the contract of sale."

[15] *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 146-147 (3) (524 SE2d 790) (1999).

[16] *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 711-712 (2) (507 SE2d 493) (1998). See also *Orion Capital Partners v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 541-543 (2) (478 SE2d 382) (1996).

[17] *Roth v. Connor*, 235 Ga. App. 866, 871 (3) (510 SE2d 550) (1998).

leging fraudulent misrepresentations when the record demonstrates that the plaintiff's reliance on the misrepresentations was not "justifiable."[18] In order to prove the element of justifiable reliance, the plaintiff must show that he exercised his duty of due diligence.[19] And, "[w]hen the means of knowledge are at hand and equally available to both parties to a contract of sale, if the purchaser does not avail himself of these means, he will not be heard to say . . . that he was deceived by the representations of the seller."[20] On the other hand, a plaintiff is not required to prove that he "exhaust[ed] all means at his command to ascertain the truth before relying upon the representations."[21]

Difficulties arise for the bench and bar in discerning when the reasonableness of the plaintiff's reliance on the representations is a question of fact for the jury and when the reliance is unreasonable as a matter of law.[22] The case at bar concerns representations about encumbrances on the sellers' title. Therefore precedents about active or passive concealment of tangible defects in real or personal property may or may not be apposite.

Speaking only to representations about title, including liens, encumbrances, easements, and other restrictions on use, the controlling precedents say that the location of information in public records does not necessarily defeat a claim of passive concealment. For example, in *Akins v. Couch*,[23] the information could have been found in health department records. In *Wiederhold v. Smith*,[24] the information could have been found in the files of the county department of public works. In both cases, the reasonableness of the buyers' reliance on the sellers' representations was held to be a question of fact for the jury.

In other words, in a suit asking for damages for an allegedly fraudulent misrepresentation, the issue of the reasonableness of the plaintiff's reliance on the representation is, more often than not, a question for the jury. However, Georgia courts over the decades have adhered to one "bright-line" rule in this area: when the falsity of the representation could have been revealed by a search of the county land records, a failure to search those records makes the reliance on the representation unjustified as a matter of law.[25] This rule applies

---

[18] *Hanlon v. Thornton*, supra, 218 Ga. App. at 501 (1).

[19] *Hill v. Century 21 &c. Realty*, 187 Ga. App. 754, 756 (2) (371 SE2d 217) (1988).

[20] (Punctuation omitted.) Id.

[21] *Dorsey v. Green*, 202 Ga. 655, 659 (44 SE2d 377) (1947).

[22] Compare *Pirkle v. Gurr*, 218 Ga. 424 (128 SE2d 490) (1962), with *Simmons v. Wooten*, 241 Ga. 518 (246 SE2d 639) (1978).

[23] 271 Ga. 276 (518 SE2d 674) (1999).

[24] 203 Ga. App. 877 (418 SE2d 141) (1992).

[25] *Roth v. Connor*, supra, 235 Ga. App. at 871 (3); *Hill v. Century 21 &c. Realty*, supra,

whether the representation concerns the purchase of real estate or concerns the purchase of personalty, in the case at bar, an asset purchase and a lease of the premises.

The reason for the rule is that the law expects citizens to exercise at least a minimum of due care to protect themselves from fraud. In the case at bar, no prudent person would invest $60,000 to buy a restaurant, i.e., the trade name, good will assets, equipment, and lease of the business, without checking the county land records to learn if any liens or security interests encumbered the assets being purchased. Local governments spend considerable money each year to maintain land records and make them available to the bar and the public. They are maintained and made available to allow the public to protect itself against precisely the type of imbroglio shown in this litigation. In Georgia, the land records also contain filings of UCC security interests and Revenue Department liens.[26] Therefore the bright-line rule applies to transactions which would be adversely affected by such liens and security interests, whether those transactions involve real property or personalty.

It might be argued that none of the precedents establishing the bright-line rule involve representations made by affidavit and that such sworn representations should require less diligence on the part of the purchaser. However, we have not in the past applied a different rule for sworn representations,[27] and we decline to do so here. An examination of the county land records, i.e., the records that are usually searched prior to a closing, would have revealed the liens and the security interest.[28] Dyer's failure to examine those records makes his reliance on R. Honea's representations unjustified. Summary judgment on the fraud claim was appropriate.

(c) Dyer's admission that the liens have been satisfied negates his ability to prove damages, an essential element of his breach of contract claim against R. Honea. Accordingly, the trial court erred in denying summary judgment on this claim as well.

(d) As Dyer cannot prevail on his fraud claim against R. Honea, the conspiracy claim fails as well. See Division 2, supra.

(e) Finally, R. Honea contends that the trial court erred in denying summary judgment to him on the issue of whether the corporate

---

187 Ga. App. at 756 (2); *Zeeman v. Black*, 156 Ga. App. 82 (273 SE2d 910) (1980). See also *Talmadge Bros. & Co. v. Interstate Bldg. &c. Assn.*, 105 Ga. 550 (31 SE 618) (1898).

[26] See OCGA §§ 11-9-501 (a); 34-8-167 (c).

[27] See *Fowler v. Overby*, 223 Ga. App. 803 (478 SE2d 919) (1996) (affidavit that the property was never used as a landfill).

[28] See OCGA §§ 11-9-501 (a); 34-8-167 (c); *Trust Co. Bank v. Ga. Superior Court Clerks' Coop. Auth.*, 265 Ga. 390 (456 SE2d 571) (1995). Cf. *Wiederhold v. Smith*, supra, 203 Ga. App. at 879 (2) ("We note that plaintiff performed a title search, as is typical of purchasers, but nothing concerning the hold on the lot was located in the deed records.").

veil of JFFI may be pierced so as to hold him individually liable. However, as the case against JFFI remains pending below, our determination of this issue would be premature. Accordingly, the denial of summary judgment to R. Honea on this issue is affirmed.

*Case No. A01A0993*

4. Bailey's cross-appeal challenges the denial of his motion for summary judgment on Dyer's legal malpractice claim.

Construing the evidence most favorably to Dyer, we hold that disputed factual issues remain for a jury to determine.

The evidence shows that on August 10, Dyer and J. Honea briefly memorialized their initial agreement to consummate the sale of the restaurant. The transaction was delayed several weeks while Dyer awaited approval from the owner of the shopping center to transfer the lease. Dyer ultimately retained the law firm of Peevy & Lancaster to draft a formal sales agreement. On September 22, Dyer presented a copy of the agreement to J. Honea. Dyer deposed that J. Honea indicated his surprise at the complexity of the document and stated that he would fax it to his father and their attorney.

According to Dyer, he received a telephone call that evening from an individual who identified himself as Wayne Bailey. Dyer testified that the individual was "quite angry" that Dyer had delayed the transaction and accused Dyer of dealing in bad faith. Dyer further deposed that the attorney stated that he could prepare the documents quickly while protecting Dyer's best interest.

Three days later, Dyer testified, J. Honea informed him in person that he and R. Honea considered the contract unsuitable for the purchase of a small business. According to Dyer, J. Honea then called Bailey and handed the telephone to Dyer. Dyer deposed that Bailey told him that the sales contract drafted by Peevy & Lancaster was inappropriate; that Bailey could prepare a contract by day's end; that Bailey could represent Dyer; and that Dyer would be responsible for paying closing costs of $750. J. Honea presented a contract prepared by Bailey to Dyer that same day. Dyer testified that based on this conversation, he believed he had retained Bailey.

In his deposition, Bailey categorically denied speaking with Dyer on either September 22 or September 25. He further deposed that at the closing on September 27, he informed Dyer that he represented the Honeas and that if Dyer wished to have his attorney present, the closing could be rescheduled. In addition, he explained that the $750 rate was a flat fee for preparing the closing documents.

Dyer deposed that Bailey did not state that he represented only the Honeas. According to Dyer, Bailey said he was "very sorry" for all the "problems" Dyer had had with his attorney. Dyer deposed further

that Bailey stated that J. Honea "had done a great job with that business, that he had basically taken a rat hole and turned it into a profitable location."

Bailey further deposed that at the time of the closing, he was unaware of the existence of any liens against JFFI or the restaurant. The record shows, however, that Bailey's name appears on the original UCC financing statement reflecting James R. Heath's lien upon the restaurant's equipment. "In a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff."[29]

In denying summary judgment to Bailey, the trial court ruled that genuine issues of fact remained as to the reasonableness of Dyer's belief that an attorney-client relationship existed between Dyer and Bailey. This ruling is enumerated as error. Notwithstanding Bailey's protests to the contrary, Dyer's deposition testimony creates an issue of fact as to whether he reasonably believed that he had hired Bailey to represent him at the closing. Bailey's reliance on *Guillebeau v. Jenkins*[30] is misplaced. The factors which led the court in *Guillebeau* to affirm the grant of summary judgment to the closing attorney in a real estate transaction are absent from this case. In *Guillebeau,* it was undisputed that the plaintiff and the closing attorney had no contact before the closing, so that no legal advice was sought, and none given. In the instant case, it is for a jury to decide whether Bailey offered legal representation to Dyer.

5. Bailey next asserts that Dyer's failure to rescind the sales contract bars his legal malpractice claim. This contention is meritless. The remedy of rescission refers to the "right of one *party* to rescind a contract, for nonperformance by the other *party* of his obligations thereunder. . . ."[31] As Bailey was not a party to the contract between the Honeas and Dyer, Dyer's failure to plead rescission does not bar his malpractice claim against Bailey.

*Pennington v. Braxley*,[32] upon which Bailey relies, does not mandate a contrary result. *Pennington* held that a merger clause barred a disgruntled home buyer from asserting a malpractice claim against the seller's real estate agent based on his failure to disclose that the home was infested with bats. There, the agent was a party to the con-

---

[29] (Citations and punctuation omitted.) *Huntington v. Fishman*, 212 Ga. App. 27, 29 (441 SE2d 444) (1994).
[30] 182 Ga. App. 225, 229-231 (1) (355 SE2d 453) (1987).
[31] (Punctuation omitted; emphasis supplied.) *Cutcliffe v. Chesnut*, 122 Ga. App. 195, 201 (2) (176 SE2d 607) (1970), citing *Fletcher v. Fletcher*, 158 Ga. 899 (2) (124 SE 722) (1923).
[32] 224 Ga. App. 344 (480 SE2d 357) (1997).

tract, and no confidential relationship existed between the agent and the purchaser, as is suggested here.

6. In his remaining enumerations of error, Bailey essentially contends that he was entitled to summary judgment because Dyer failed to produce evidence of damages proximately caused by Bailey's alleged negligence or breach of fiduciary duty. We do not agree. Dyer testified that he would not have purchased the restaurant had Bailey informed him of the outstanding liens and that as a result of the purchase, he was forced to borrow funds to keep the restaurant open. "Once a plaintiff establishes that damages proximately flow from the defendant's alleged conduct, mere difficulty in fixing their exact amount should not be a legal obstacle to recovery."[33]

7. Bailey next alleges that the pendency of viable claims against J. Honea, R. Honea, and JFFI mandates the grant of his motion for summary judgment. We disagree.

Bailey cites *Allen Decorating v. Oxendine*[34] for the proposition that where the underlying action remains pending, plaintiff can prove no injury because the action may terminate favorably for the client. While the proposition is correct, it has no application in the context of the instant case. Rather, it applies to cases in which the alleged malpractice arises out of the attorney's handling of underlying litigation on behalf of the plaintiff. As we held in *Allen Decorating*: "appellant cannot maintain any viable malpractice claim based on assertions of appellees' professional negligence *arising from the conduct of suits still pending judicial resolution.*"[35]

Such is not the case here. Bailey handled no suit on Dyer's behalf which remains pending. Accordingly, the principle for which *Allen Decorating* stands does not bar the instant malpractice claim. It follows that the trial court correctly denied Bailey's motion for summary judgment.

*Judgments affirmed in Case Nos. A01A0991 and A01A0993. Judgment affirmed in part and reversed in part in Case No. A01A0992. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED NOVEMBER 15, 2001 —
RECONSIDERATION DENIED DECEMBER 4, 2001 — ▮▮▮▮▮

*Peevy & Lancaster, Gregory W. Lancaster*, for Dyer.
*Daniels & Taylor, Jerry A. Daniels, Webb & Lindsey, Jonathan J. Wade, Dennis L. Collins III*, for Honea et al.

---

[33] (Punctuation omitted.) *Freeman v. Pittman*, 220 Ga. App. 672, 674 (2) (469 SE2d 543) (1996).
[34] 225 Ga. App. 84, 88 (2) (483 SE2d 298) (1997).
[35] (Emphasis supplied.) Id.

*Troutman Sanders, William M. Droze, Daniel S. Reinhardt*, for Bailey.