A04A0845. PAUL et al. v. SMITH, GAMBRELL & RUSSELL.
(599 SE2d 206)

ELDRIDGE, Judge.

This is an appeal by the plaintiffs G. Douglas Paul, Sharon V. Paul, Catspaw Productions, Inc., Catspaw, Inc., Atlanta Catsco, Inc., and Recording Studio, Inc. from the partial grant of summary judgment in a legal malpractice action against their former law firm Smith, Gambrell & Russell n/k/a Smith, Gambrell & Russell, LLP. In the underlying commercial litigation, Ralph Destito, their former partner, sued the plaintiffs for fraud, negligent misrepresentation, conspiracy to breach fiduciary duty, negligent breach of fiduciary duty, and alter ego liability, and the jury found in writing that the plaintiffs committed all of these tortious acts with the specific intent to harm Destito, awarded general damages and awarded punitive damages in excess of the statutory limit. This judgment was affirmed

[9] *In re S. D. S.*, 166 Ga. App. 344, 345 (2) (304 SE2d 85) (1983).
[10] *In the Interest of S. J. M.*, 225 Ga. App. 703, 705 (484 SE2d 764) (1997).

in *Paul v. Destito*, 250 Ga. App. 631, 640 (7) (550 SE2d 739) (2001). In the case now before the Court, the trial court found that the plaintiffs' own conduct and not legal malpractice was the sole cause of the award of punitive damages in the underlying case and that such sum for punitive damages could not be recovered as a matter of public policy from their lawyers in this subsequent legal malpractice action. At the trial of the underlying action after Destito's expert accounting witness testified, as a matter of discretion and judgment, the defendants decided not to call the plaintiffs' expert witness on accounting, because the expert witness was not a fact witness and was an expert witness only as to opinions on accounting. In this case, the trial court granted partial summary judgment as to the alleged legal malpractice claims based on not calling the opinion expert, because the defendants believed this to be an honest exercise of professional judgment, giving rise to judgmental immunity. We affirm as to the grant of partial summary judgment as to the issue of punitive damages in the underlying case; we reverse as to the grant of partial summary judgment as to the exercise of honest professional judgment, because only a jury can decide such issue under the facts and circumstances of this case in light of evidence of conflicts of interest.

Smith, Gambrell & Russell had represented the plaintiffs for 15 years. Defendants represented both plaintiffs and Destito in various corporate matters leading up to the suit that involved the issues raised in this suit. The defendants represented the plaintiffs in the defense against the suit by Destito; this raised issues of conflict of interest. In fact, counsel for Destito raised the issue of the conflict of interest in the underlying suit and pre-suit activities. In *Paul v. Destito*, supra, a full description of such relationship between Destito and the plaintiffs is set forth.

1. Plaintiffs contend that the trial court erred in granting partial summary judgment to the defendants under the defense of judgmental immunity. We agree under the peculiar facts of this case where an issue of conflicts of interest exists.

Legal malpractice requires that the client carry the burden of proof that there existed: "(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage[s] to the plaintiff." (Citations and punctuation omitted.) *Mauldin v. Weinstock*, 201 Ga. App. 514, 518 (4) (411 SE2d 370) (1991); see also *Allen Decorating v. Oxendine*, 225 Ga. App. 84, 88 (2) (483 SE2d 298) (1997).

Where professional judgment is involved, "[t]his Court will not hold an attorney liable for malpractice based merely on the attorney's choice of trial tactics or strategy or the good faith exercise of professional judgment." *Allen Decorating v. Oxendine*, supra at 89 (2).

There can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an *honest exercise of professional judgment*. This is a sound rule. Otherwise every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight. If this were permitted, the original trial would become a "play within a play" at the malpractice trial.

(Citation and punctuation omitted; emphasis supplied.) *Hudson v. Windholz*, 202 Ga. App. 882, 886 (3) (416 SE2d 120) (1992). See also *Allen Decorating v. Oxendine*, supra at 89. "[T]he tactical decisions made during the course of litigation require, by their nature, that *the attorney be given a great deal of discretion*." (Citations omitted; emphasis supplied.) *Berman v. Rubin*, 138 Ga. App. 849, 851, n. 2 (227 SE2d 802) (1976). The honest exercise of professional judgment is dependent upon the reasonable exercise of discretion free from outside influence. *Hudson v. Windholz*, supra at 886; *Berman v. Rubin*, supra at 851. This exercise of discretion must be free of any conflict of interest to be truly an independent exercise of discretionary judgment, otherwise it may be neither honest nor untainted by divided loyalties, which presence compromises the exercise of honest judgment. Id.

In the area of criminal law involving ineffective assistance of counsel, it has been repeatedly held that the decision to call or not call a witness is a matter of trial tactics and strategy. *Thompkins v. State*, 272 Ga. 835, 836 (2) (a) (536 SE2d 747) (2000); *Holmes v. State*, 272 Ga. 517, 520 (8) (529 SE2d 879) (2000). Thus, the question to call or not call a witness comes within the area of professional judgment that may be covered by judgmental immunity in the appropriate case, which a jury must decide if there exists any issue as to the independent exercise of such judgment.

Conflicts of interest between the client and the attorney may arise under many different factual settings. "[A] lawyer is disqualified from representing a party against a former client in a matter that is 'substantially related' to the lawyer's prior representation. *Tilley v. King*, 190 Ga. 421 (9 SE2d 670) (1940)[, rev'd on other grounds, 193 Ga. 602 (19 SE2d 281) (1942)]. See also *Summerlin v. Johnson*, 176 Ga. App. 336 (335 SE2d 879) (1985)." (Footnote omitted.) *Crawford W. Long Mem. Hosp. &c. v. Yerby*, 258 Ga. 720, 721 (1) (373 SE2d 749) (1988). In such case, the representation of a former client during the time that the subsequent client's cause of action arose constitutes such a serious appearance of conflict of interest that recusal of counsel was required.

"[A] lawyer should always act in a manner consistent with the best interests of his client." It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client — undiluted by conflicting or contrariant obligations, and undiminished by interests of himself or of others.

*Ga. State Bd. of Pharmacy v. Lovvorn*, 255 Ga. 259, 263 (4) (336 SE2d 238) (1985) (Marshall, P. J., dissenting, citing from then Ethical Consideration 7-9 (252 Ga. 571, 619)). While a conflict of interest may be waived, such waiver must be knowingly made after full disclosure of all facts.

[I]f a client's written consent (or a lawyer's written notice to the client) does not include the required full disclosure as part of the writing, it must contain some recognition that the client's decision and consent were made with knowledge of the potential conflict of interest. In other words, the required writing must at least acknowledge the disclosure essential to an informed decision and consent.

*In re Estate of Peterson*, 255 Ga. App. 303, 305 (565 SE2d 524) (2002) (lawyer who drew the will had himself named as executor in the will).

There is no rule of law or of ethics which prevents an attorney from taking employment in a case merely because he has previously represented (or even at the same time represents) an opposite party to the case, provided the cases are not related to each other in some substantial respect. But if the two cases are substantially related, it is no answer for the attorney, who has appeared for the party in one of them, to say, when he attempts to appear against that party in the action, that he had no confidential information from his client. The rule must of necessity be that if an attorney has been employed in a matter and has appeared in court in connection therewith, he can not thereafter accept employment and appear in a case against his former client, where under the latter employment he must necessarily assume a position contrary to that involved in his former employment. If the disqualification of an attorney in such case were made to depend on whether he had had any confidential communications with his former client or had gained information that might be used to [the client's] prejudice, the court would be called upon to investigate what, if any, communications had taken place between the parties. . . . In other words, we do not think that without the client's consent the court should

go into what was or was not said and done between the attorney and the client, if the contract of employment was absolutely consummated, or the attorney appeared for the client in court.

*Tilley v. King*, supra at 424-425 (2), rev'd on other grounds, supra, 193 Ga. 602.

Since the plaintiffs have created in the record disputed issues as to the existence, absence, or waiver of conflicts of interest between the plaintiffs and the defendants in the underlying case and since the existence of a conflict or conflicts of interest have a real or subconscious effect on the judgment of counsel by creating divided loyalties between present and former clients, then there is created a jury question as to whether or not the defendants could exercise honest, reasonable discretion and the independent judgment necessary for judgmental immunity to be a defense as a matter of law. Divided loyalties from a conflict in interest create both an objective and a subjective state of mind in counsel. Generally, preserving the attorney-client privilege as it pertains to the litigation is a general danger from a conflict, and such is an objective standard, existing in some conflict cases. *Summerlin v. Johnson*, supra at 338; *Piedmont Life Ins. Co. v. Lea*, 140 Ga. App. 400, 402 (3) (231 SE2d 147) (1976); cf. *Atwood v. Sipple*, 182 Ga. App. 831, 833-834 (3) (357 SE2d 273) (1987). "But there are many subtle, perhaps unconscious ways that confidential information . . . can be used, and indeed must be used by the attorney in his representation of [the client] if he is to devote his entire loyalties to [this client's] claim." *Summerlin v. Johnson*, supra at 339 (1). Any reluctance, hesitation, or inhibition to represent the current client with zeal against the former client would constitute a subjective state of mind, which is more subtle, because the attorney may not consciously recognize such inhibition in the representation. *Thompson v. State*, 254 Ga. 393, 396-397 (2) (330 SE2d 348) (1985); *Young v. Champion*, 142 Ga. App. 687, 689-690 (1) (236 SE2d 783) (1977). "[I]f the interests of another client may impair [the lawyer's] independent professional judgment," then the lawyer is prohibited from representing the client against another client or former client. *Summerlin v. Johnson*, supra at 339. "A mere potential of inadequate representation that is caused by a split of loyalties is a harm that the conflict of interest rules were designed to protect." (Citation, punctuation and emphasis omitted.) Id. Thus, when conflicts of interest are raised and when judgmental immunity is also raised as a defense, a jury question as to judgmental immunity arises, because proof of the existence of a conflict also gives rise to the reasonable inference that such conflict influenced the exercise of discretion, requiring the denial of the motion for summary judgment and allowing the jury to

resolve such issues. See generally as to former representation of the opposite party giving rise to a conflict of interest, *Castell v. Kemp*, 254 Ga. 556, 557-558 (331 SE2d 528) (1985); *Mitchell v. Mitchell*, 184 Ga. App. 903, 907-908 (4) (363 SE2d 159) (1987).

2. Plaintiffs contend that the trial court erred in granting partial summary judgment as to punitive damages. We disagree.

Defendants' motion for partial summary judgment only went to the legal issue of whether, in a legal malpractice action based on an underlying action where punitive damages were awarded for intentionally causing injury, such award for punitive damages could be recovered in the malpractice action, not as new punitive damages for the malpractice, but as part of the recovery of damages in a prior award. The trial court ruled only on the recovery of punitive damages awarded in the underlying action and did not rule that punitive damages could not be recovered in this malpractice action, if appropriate.

(a) Contrary to the contentions in plaintiffs' brief, the issue of whether or not punitive damages can be recovered in this legal malpractice action is not before this Court on appeal. Whether or not punitive damages are authorized in this legal malpractice action was not raised in the trial court and was not ruled upon in the trial court. *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002). Therefore, such issue is not properly before this Court and is deemed waived.

(b) The defendants moved for partial summary judgment on the issue of whether or not punitive damages awarded as damages in the underlying case could be recovered against them in this case, if they were found liable, because public policy does not allow such shifting of damages to penalize, punish, and deter the specific wrongdoer, i.e., the plaintiffs. The trial court granted partial summary judgment, excluding from possible damages the punitive damages previously awarded against the plaintiffs for their intentional conduct to specifically harm Destito.

The express purpose of punitive damages in Georgia, now, is to penalize, punish, or deter the defendant and not the conduct. OCGA § 51-12-5.1 (c); *May v. Crane Bros., Inc.*, 276 Ga. 280, 281, n. 2 (576 SE2d 286) (2003). Unlimited punitive damages in excess of the statutory limits can only be awarded against the active tortfeasor who the jury has specifically found in writing to have intended to cause the plaintiff's injury. OCGA § 51-12-5.1 (f), (g); *McDaniel v. Elliott*, 269 Ga. 262, 265 (3) (497 SE2d 786) (1998); *Alta Anesthesia Assoc. of Ga. v. Gibbons*, 245 Ga. App. 79, 89-90 (8) (537 SE2d 388) (2000). Punitive damages as a personal tort action are nonassignable. *In re Estate of Sims*, 259 Ga. App. 786, 791, n. 2 (578 SE2d 498) (2003);

*Southern R. Co. v. Malone Freight Lines*, 174 Ga. App. 405, 408 (1) (330 SE2d 371) (1985) (subrogation action).

Therefore, to allow the plaintiffs to shift their tort liability for punitive damages that the plaintiffs were specifically found by clear and convincing evidence to have caused intentionally would be contrary to the public policy of Georgia, even if former counsel were found liable for legal malpractice in the action in which punitive damages were awarded.

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Adams, J., concur.*

DECIDED APRIL 14, 2004 —

*Beltran & Associates, Frank J. Beltran, Douglas V. Chandler*, for appellants.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Robert G. Tanner, Shawn D. Scott*, for appellee.