## A95A2237. PERRY v. OSSICK.
### (467 SE2d 604)

ANDREWS, Judge.

Sharon Perry brought a legal malpractice action against Ossick, the attorney who represented her in a divorce action. The trial court granted summary judgment in favor of Ossick, and Perry appeals.

Ms. Perry claims Ossick failed to adequately advise her about the risks associated with a portion of the settlement agreement in the divorce action providing that Mr. Perry pay her $185,000 by giving her a note in that amount designated as a property distribution and secured by certain real property. After Ossick agreed to represent Ms. Perry in the divorce action, settlement terms were initially worked out in direct talks between Ms. Perry and Mr. Perry. Ossick reviewed the proposed agreement with Ms. Perry, advised her, made revisions, and prepared the final agreement which was signed by both parties in May 1988 and incorporated into the final judgment and decree in the divorce action. In general, the agreement provided for joint custody of the parties' three minor children, child support, medical and life insurance, division of household goods and automobiles, a cash payment by Mr. Perry in the amount of $15,000, and a note from Mr. Perry to Ms. Perry in the amount of $185,000 designated as a property distri-

bution. The agreement provided that the note was payable in nine years with no interest and that it was secured by security interests executed by Mr. Perry in his business office and the marital residence. The agreement further provided that payment of equity from any sale of the marital residence up to $40,000 was to be applied to payment on the note and that, in any year Mr. Perry earned in excess of $60,000, he was to pay ten percent of his net income to be applied toward amortization of the note.

Mr. Perry made the $15,000 cash payment called for under the settlement agreement, and in 1988, when his income exceeded $60,000, he paid $7,000 toward amortization of the note under the terms of the agreement. Mr. Perry's income decreased in subsequent years, and no other payments were received by Ms. Perry in reduction of the note. In July 1991, the business office and the marital residence securing the note were foreclosed on by the holders of first debt deeds, which were senior to the security interests in the properties given by Mr. Perry under the settlement agreement.

In August 1991, Mr. Perry filed a Chapter 7 bankruptcy petition and sought to have the remainder of the $185,000 note obligation discharged in bankruptcy as a property distribution. Ms. Perry filed an adversary proceeding challenging the discharge of the note on the basis that, despite being characterized as a property distribution in the settlement agreement, the payment was actually a non-dischargeable support obligation. This issue was tried before the bankruptcy court, which ruled that $64,400 of the obligation was actually in the nature of non-dischargeable support, but that the balance was a dischargeable property distribution. No appeal was taken from the order of the bankruptcy court.

Ms. Perry deposed that, other than personal effects, automobiles and household goods and furniture divided up in the settlement agreement, the only other assets at issue were the marital residence, Mr. Perry's business office, and a lot owned by Mr. Perry. It is undisputed there were first mortgages on both the residence and the office, and there was little or no equity in either of these properties at the time of the settlement agreement. Ms. Perry testified that, although she was aware of a first mortgage on the marital residence and was aware that Mr. Perry had borrowed about $150,000 on his office, she was not informed and did not know how much equity was in the residence or the office at the time she signed the settlement agreement. She testified that Ossick did not discuss with her the effect that foreclosure on the properties could have on the security for the note. She testified that she did become aware, prior to foreclosure, that the senior mortgages on the residence and office had gone into default. Upon learning of the impending foreclosures, she had discussions with Mr. Perry in an effort to convince him to stop the foreclosures, and she

considered taking some action on her own to stop the foreclosures, but took none. Ms. Perry further testified that, in advising her on the structuring of the settlement agreement, Ossick explained some of the advantages and disadvantages of alimony and property division, including advice that alimony as opposed to property division was taxable as income and was subject to modification, but that he did not tell her that property division was subject to discharge in bankruptcy, while alimony was not.

On the other hand, Ossick deposed that he did inform Ms. Perry of the fact that a property division was subject to being discharged in bankruptcy, and that he discussed with her the risk that there was a lack of equity in the business office being taken as security for the note. Ossick also gave undisputed deposition testimony that he recommended to Ms. Perry that the lot owned by Mr. Perry be designated as additional security for the note since it had equity, but that Ms. Perry rejected this recommendation indicating she had agreed to let Mr. Perry keep the lot for sale.

In the pre-trial order entered by the trial court, Ms. Perry alleges that, in advising her with respect to the $185,000 payment in the settlement agreement, Ossick was negligent because he: (1) failed to advise her that a possible consequence of characterizing the payment as property distribution as opposed to alimony was that the note could be discharged in bankruptcy; (2) failed to investigate to determine and advise her of the status of the first mortgages and the existing equity in the properties in which junior security interests were taken as security for the note; and (3) failed to include a clause in the settlement agreement requiring that Ms. Perry be given notice of any foreclosure action on the secured properties.

Although Ossick gave testimony to the effect that he adequately investigated and advised Ms. Perry as to the financial circumstances, various options for structuring the settlement agreement, and the associated advantages and disadvantages, and acted within the appropriate standard of care, Ms. Perry provided expert testimony from an attorney, who testified that, in his opinion, Ossick's representation of Ms. Perry was below the standard of care for attorneys under the circumstances. In summary, the expert testified that, assuming Ms. Perry did not know of the lack of equity in the two properties used to secure payment on the note, and that Ossick did not otherwise determine and advise Ms. Perry of the lack of equity, Ossick did not adequately advise Ms. Perry of the risk she was taking in accepting the note for $185,000. The expert also testified that, assuming Ossick failed to advise Ms. Perry that, as a property distribution, the note was subject to being discharged in bankruptcy, this failure was also below the appropriate standard of care.

" 'In a legal malpractice action, the client has the burden of es-

tablishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. (Cits.)' [Cits.]" *Huntington v. Fishman*, 212 Ga. App. 27, 29 (441 SE2d 444) (1994). As to the first element, it is undisputed that Ossick was employed by Ms. Perry as her attorney to advise her with respect to the settlement agreement. We need not address the second element because, even assuming that a question of fact existed as to whether Ossick failed to exercise ordinary care, skill, and diligence under the circumstances, the record fails to establish a question of fact as to the third element regarding damages.

As damages, Ms. Perry claims she has not received full payment on the $185,000 obligation. She does not contend that the amount of the $185,000 payment contemplated in the settlement agreement was inadequate. Rather, she contends that Ossick's alleged negligence caused her to accept the note as a means of obtaining the $185,000 without realizing the actual risk that the note might not be paid. Apparently, Ms. Perry would claim that, had Ossick properly advised her of the risk, she would have rejected the note as a means to obtain payment of the $185,000 and would have attempted to obtain the $185,000 payment from Mr. Perry in some other manner. Even if Ms. Perry could have sought to collect all or part of the $185,000 in the form of alimony, there is no evidence in the record showing that any such claim would have been awardable or collectable against Mr. Perry. "A client suing his attorney for malpractice not only must prove that his claim was valid and would have resulted in a judgment in his favor, but also that said judgment would have been collectible in some amount, for therein lies the measure of his damages." *McDow v. Dixon*, 138 Ga. App. 338, 339 (226 SE2d 145) (1976).

Moreover, pursuant to Mr. Perry's bankruptcy petition, the bankruptcy court found the remainder of the obligation was dischargeable property distribution, except for $64,400 found to be nondischargeable support still payable by Mr. Perry. Accordingly, it appears any damage to Ms. Perry was the complete loss of the right to receive payment of the discharged portion of the obligation and the risk she bore that Mr. Perry would not pay the remaining amount still due on the note.

As to the portion of the $185,000 obligation discharged by the bankruptcy court, the mere characterization of the payment in the settlement agreement as a property distribution did not affect the bankruptcy court's determination as to whether, under all the circumstances of the marital situation, the obligation was in the nature of non-dischargeable alimony, maintenance or support pursuant to 11 USC § 523, or was a dischargeable property distribution. *Manuel v. Manuel*, 239 Ga. 685, 688 (238 SE2d 328) (1977). "It is clear that in

federal bankruptcy proceedings the bankruptcy court sitting in equity is not bound by the terms of the agreement or decree and has the power to sift the circumstances of the marital situation to determine whether the wife's claim is in fact for maintenance or support and, therefore, nondischargeable. [Cits.]" Id. at 688. As the trial court noted in its order granting summary judgment, the bankruptcy court concluded that the circumstances at the time the settlement agreement was entered showed that Ms. Perry's income was sufficient to meet all needs for support including food, housing, and basic necessities, that Ms. Perry testified she intended to use the payment at issue to pay some bills, take a vacation, and buy some extras for the children. Accordingly, the bankruptcy court concluded that, except for $64,400 of the obligation intended for the childrens' college education, the obligation was not in the nature of support. Furthermore, since no appeal was taken from the order of the bankruptcy court, the judgment was res judicata. Id. at 686; *Collins v. Collins*, 208 Ga. App. 862 (432 SE2d 605) (1993).

There is nothing in the record showing that, under the marital circumstances, the payment of the $185,000 could have been characterized or structured in a manner that would have eliminated the risk of dischargeability in bankruptcy. Accordingly, there is no evidence that any alleged failure by Ossick had any causative effect on Mr. Perry's right to seek discharge in bankruptcy or the bankruptcy court's determination that a portion of the obligation was dischargeable. As to the non-dischargeable portion still payable under the note, as stated above, Ms. Perry has produced no evidence showing that the obligation would have been otherwise awardable or collectable against Mr. Perry, so no damages have been demonstrated. *McDow*, supra at 339. In the absence of evidence to support the essential element of damages proximately caused by the alleged professional negligence, summary judgment in favor of Ossick was appropriate. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

Ms. Perry also alleged that Ossick negligently failed to include a clause in the settlement agreement requiring that she be given notice of any foreclosure action on the properties securing the note so she could have an opportunity to protect her interests. First, it is not clear that Ms. Perry produced the necessary expert opinion in response to Ossick's motion for summary judgment indicating that this specific failure was below the applicable standard of care for attorneys under the circumstances. See *Graves v. Jones*, 184 Ga. App. 128, 130 (361 SE2d 19) (1987). Even assuming the expert did render this opinion, the record shows Ms. Perry had prior notice of the foreclosures, so she has demonstrated no harm.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 26, 1996.

*Farnham & Wheeler, David J. Farnham,* for appellant.
*Freeman & Hawkins, Thomas F. Wamsley, Jr., Kristrine B. Morain, H. Lane Young II,* for appellee.