A96A2218. PENNINGTON et al. v. BRAXLEY et al.
(480 SE2d 357)

BLACKBURN, Judge.

After discovering that the house they recently purchased was infested with bats, Lee Wall Pennington and Carl C. Pennington sued the real estate agent who assisted the seller in the transaction, the agency he represented, and his broker. The Penningtons appeal the grant of defendants' motion for summary judgment on their claim of professional malpractice, asserting that such a claim is not barred by the "entire agreement" clause contained within their sales contract. The Penningtons further assert that the entire agreement provision should be declared void as against public policy as it constitutes an impermissible exculpatory clause.

The Penningtons entered into a sales contract to purchase the home in July 1992. The contract they signed expressly stated that it contained the "entire agreement" of the parties and that the buyers

were purchasing the property "as is." On various occasions after taking possession of the property, the Penningtons received indications that bats were present inside the house, but the severity of the problem was not determined until June 1993 when approximately 125 live bats were found nesting inside the walls of the house. Because of the number of bats and the amount of bat guano located within the walls as well as other factors, the Penningtons determined that the infestation pre-dated their purchase. The Penningtons filed suit against Don Braxley, the real estate agent who represented the seller, on the grounds of fraud, misrepresentation, and professional malpractice.[1] The Penningtons also sued Chambers Realty & Associates, C.R.A., the agency Braxley was affiliated with, and Frank Chambers, who was Braxley's broker, claiming they were derivatively liable for Braxley's acts and omissions. The seller was originally a party to the litigation but was dismissed from the underlying suit. The record reflects that Braxley knew that bats occasionally got inside the house at the time the Penningtons entered into the sales contract, but there is no indication he understood the severity of the problem.

The trial court granted the motion for summary judgment filed by Braxley, his agency, and his broker. The trial court found that because the Penningtons never rescinded the contract, their claims for fraud and negligent misrepresentation were barred by the entire agreement clause contained therein. The trial court also found that the allegations of malpractice, which concerned Braxley's failure to disclose the bat problem, were so akin to the claims for fraud that they too were barred by the entire agreement clause within the contract.

1. The Penningtons assert the trial court erred in granting summary judgment on their claims of malpractice[2] by treating it like a claim for fraud. To evaluate this contention, it is necessary to analyze when and why an entire agreement clause works to bar a fraud claim.

"When a vendee is induced to enter into a contract for the purchase of land by fraud of the vendor, when the vendee discovers the fraud he has an election of remedies. One of such remedies is to rescind the contract, and another is to affirm the contract and sue for damages for the fraud." (Punctuation omitted.) *Wilhite v. Mays*, 239

---

[1] In certain circumstances, a real estate agent involved in the transfer of defective property may be liable to the buyer if the agent knows of the defects but does not disclose them. See *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 76 (441 SE2d 421) (1994).

[2] See *Allen v. ReMax North Atlanta*, 213 Ga. App. 644, 646-647 (2) (445 SE2d 774) (1994) (real estate brokers and salespersons are licensed professionals subject to malpractice claims).

Ga. 31 (235 SE2d 532) (1977). If the purchaser affirms the sales contract, he is "bound by the contract's terms and is subject to any defenses which may be based on the contract." *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 524 (448 SE2d 271) (1994). In the event the contract contains an entire agreement clause, that clause operates as a disclaimer, establishing that the written contract completely and comprehensively represents all the parties' agreement. This clause then bars the purchaser "from asserting reliance on the alleged misrepresentation" not contained within the contract. Id. at 523. Therefore, any fraud claim the purchaser might assert would be barred because reliance is an element essential to establishing fraud. Id. In *Hightower*, summary judgment was entered on the fraud claim of a purchaser who had sued the real estate agent who represented the seller. Summary judgment was granted because the purchaser *affirmed* the sales contract which contained an entire agreement clause.

The Penningtons contend that their malpractice claim should not be treated as fraud, arguing that a malpractice claim only requires a plaintiff to demonstrate (1) duty, (2) failure to perform that duty in accordance with the recognized standard of care, and (3) that the failure proximately caused injury to the plaintiff. See generally *Grantham v. Amin*, 221 Ga. App. 458, 459 (471 SE2d 525) (1996) (elements of medical malpractice); *Perry v. Ossick*, 220 Ga. App. 26, 29 (467 SE2d 604) (1996) (elements of legal malpractice). They argue that because reliance is not an element required to prove a malpractice claim, the presence of the entire agreement clause in their sales contract should not bar their malpractice claim. The Penningtons' argument is without merit.

First, while reliance is not an express element of malpractice, in this matter, it must be implicitly proved. To demonstrate that Braxley's concealment proximately caused their injury, a required element of a malpractice action, the Penningtons must demonstrate they relied on Braxley to disclose the bat problem. However, the entire agreement clause would prevent the Penningtons from demonstrating that Braxley's misrepresentations were the proximate cause of their injury.

Second, whatever it is labeled, the malpractice claim against Braxley is, in essence, a claim of fraud. The inequity in treating this type of malpractice allegation as something different from fraud is apparent from the facts of this case, as one party could be held liable for certain conduct while another party who participates in the same or even more egregious conduct could escape liability. The record in this case reveals substantial evidence that the seller was aware of a long-term problem with bats — she had previously lived in the house, her tenants had complained of bats, she sought advice on how to alle-

viate the bat problem from a pest control company and the county extension agent, and she took measures inside the house to repel bats. While the record reflects that Braxley was aware that the seller had a problem with bats, there is no direct evidence that he knew of its severity. Despite substantial evidence of the seller's knowledge, under the Penningtons' reasoning, she could evade liability for her failure to disclose the bat problem by virtue of the entire agreement clause found in the sales contract. While the evidence of Braxley's concealment is far weaker, he could not avoid liability for the simple reasons that his failure to disclose the problem could be described in terms of malpractice as well as fraud. To permit this type of malpractice claim to survive against Braxley, when a fraud claim would not, simply exalts form over substance. See *Bytell v. Paul*, 173 Ga. App. 83, 84 (325 SE2d 451) (1984) ("[f]orm should not prevail over substance").

In light of the above, the trial court did not err in treating the Penningtons' claim of malpractice, based solely on Braxley's failure to disclose, in the same manner as a fraud claim.

2. The Penningtons contend that an entire agreement clause is similar to an exculpatory clause, and therefore its inclusion in their residential sales contract violates public policy. An entire agreement clause does not equate to an exculpatory clause. Exculpatory clauses limit liability, generally for negligent acts. For example, *Porubiansky v. Emory Univ.*, 156 Ga. App. 602 (275 SE2d 163) (1980), the primary case cited by the Penningtons, concerned a contract provision where a dental patient waived any and all claims arising out of her treatment. By contrast, entire agreement clauses generally concern contractual liability, and provide that all oral representations have merged into the written contract. See *Hightower*, supra. While an entire agreement provision may, in some instances, result in a waiver of claims, the parties to the contract have ultimate control over its impact by reducing all the vital terms of their contract to writing. Also, a party signing a contract containing an entire agreement clause is not absolutely bound by it. If that party later learns of a fraud that induced the contract but is not reflected in the contract's terms, the party has the choice of rescinding the contract and suing on the fraud or affirming the contract and being bound by its terms. The entire agreement clause will bar the fraud claim only in the latter instance.

Because of key differences in the purpose and effect of an exculpation clause as opposed to an entire agreement clause, this enumeration is without merit.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JANUARY 24, 1997 —

*Adams & Jordan, Virgil L. Adams, Cynthia A. Wilson,* for appellants.

*Lefco & Blumenthal, Stanley M. Lefco,* for appellees.