A03A1419. IKOLA v. SCHOENE et al.
(590 SE2d 750)

MIKELL, Judge.

Irene Schoene, a real estate agent associated with RE/MAX All-Stars, Inc., represented Faith M. Ikola in connection with the purchase of a home in Fayetteville. Following the first significant rainfall after closing on the home, Ikola and her husband, Grant, discovered water streaming into the basement through the sump pump and the baseboards. Ikola sued Schoene, RE/MAX, and the sellers, asserting that the defendants fraudulently concealed the leakage problem in the

---

basement and that Schoene breached her contractual and statutory duties to Ikola. Schoene and RE/MAX filed a motion for summary judgment,[1] which the trial court granted. Ikola appeals. We reverse, holding that whether Schoene violated her duties under the Brokerage Relationships in Real Estate Transactions Act ("BRRETA") is an issue of fact for a jury to decide.[2]

"When ruling on a motion for summary judgment, the trial court should give the party opposing the motion the benefit of all reasonable doubt and should construe the evidence and all inferences and conclusions therefrom most favorably toward that party."[3] We conduct a de novo review of the law and the evidence on appeal from the grant or denial of a motion for summary judgment.[4]

Construed in favor of Ikola, the evidence shows that Schoene attended church with the sellers and had previously listed the house for sale on their behalf. The listing, and Schoene's representation of the sellers, had expired before she was engaged by Ikola. Schoene disclosed her prior representation of the sellers to Ikola, but not the fact that they attended the same church.

When Ikola first saw the property, she noticed a sump pump in the basement, and Schoene told Ikola that she would never have to worry about flooding because of the pump. Ikola decided to make an offer on the home. Schoene refused to write down Ikola's first two offers, calling them an "insult." Schoene also urged Ikola to accept the property "as-is," but she refused. The contract provided Ikola with the right to inspect the property and to request that the sellers repair any defects, provided Ikola gave them an inspection report within seven days after signing the agreement. Ikola deposed that her relatives completed a walk-through. Afterward, Ikola raised the issue of a professional inspection, but Schoene told her that she was not entitled to one in addition to the walk-through because "it wasn't fair to the Mavises to put them out like that."

In addition, Ikola did not receive a copy of the sellers' property disclosure statement, although the contract stated that one was attached. The sellers, in fact, had completed two property disclosure statements. On the first statement, dated August 14, 1996, the sellers reported that the property had a sump pump and answered "yes" to the question about whether there had been water leakage or

---

[1] These defendants argued that Ikola's failure to rescind the contract barred her fraud claim; that she failed to establish the essential elements of a fraud claim; that Schoene did not breach any duty owed to Ikola; and that Ikola's post-closing acceptance of the property "as-is" barred her claims.

[2] OCGA § 10-6A-1 et seq.

[3] (Citation omitted.) *Keller v. Henderson*, 248 Ga. App. 526, 527 (1) (545 SE2d 705) (2001).

[4] Id.

dampness in the basement. However, they wrote "power outage" and answered "no" to the question whether any attempts had been made to control any such water problems. On the second statement, dated August 4, 1997, the sellers made the additional disclosure that "water accumulation from 1996 storm has been redirected and repaired." Schoene was aware of both disclosure statements prior to closing but never provided either statement to Ikola.

On the morning of the closing, Ikola, her husband, and Schoene arrived at the house to perform the final walk-through, but the power had been turned off, and they were unable to determine whether the appliances were working. The Ikolas began moving in the next day, and the first time they tried to run the dishwasher, it flooded the kitchen. Grant Ikola then telephoned Schoene to request the sellers' property disclosure statement. Not only did Schoene refuse to take his calls, she wrote Ikola a memo stating that "we closed under PHH, who does not require one." Grant Ikola finally obtained a disclosure statement from the sellers' agent six weeks after the closing.

After the dishwasher malfunctioned, Schoene drafted a document stating that Ikola agreed to replace the dishwasher herself and would pay the seller $500 for "all items on the side purchase agreement." The document, dated September 19, 1997, further stated that "as of this date buyer accepts house as is if seller and buyer agree to the above." After Ikola paid the money, she signed a receipt, again prepared by Schoene, stating that "all parties involved are now held harmless from all aspects of this transaction." The word "selling" was interposed by Ikola between "all" and "parties." Ikola testified that this agreement was made to cover the appliances, which had been listed in an addendum to the contract. It may be inferred from her testimony that the basement had not yet flooded.

1. We first address Ikola's argument that the trial court erred in ruling that the merger and disclaimer clauses contained in the parties' contract barred her breach of duty claim against Schoene.

The merger clause states that the contract contains the entire agreement of the parties and that no representation not included in the agreement shall be binding on any party. The disclaimer clause essentially provides that the buyer and seller have not relied on the broker's advice or representations and that they waive any claims against the broker arising out of such statements. The trial court relied on *Pennington v. Braxley*[5] in ruling that these clauses prevented Ikola from recovering against her own agent. In *Pennington*, we held that a merger clause barred a disgruntled home buyer from asserting a malpractice claim against the seller's real estate agent

---

[5] 224 Ga. App. 344 (480 SE2d 357) (1997).

based on his failure to disclose that the home was infested with bats. However, we noted that, in certain circumstances, the seller's real estate agent could be liable to the buyer if the agent was aware of defects in the property but failed to disclose them.[6] *Pennington* is distinguishable because the purchaser was not the client of the seller's agent, whereas in this case, Ikola was Schoene's client. As such, Schoene owed Ikola the duties set out in BRRETA.

Before BRRETA was enacted in 1993,[7] a confidential or fiduciary relationship existed between a broker and her client, "and impose[d] on the agent the duty of exercising the utmost good faith and loyalty toward the principal."[8] This broker-client confidential relationship "impose[d] a greater duty on the parties to reveal what should be revealed and a lessened duty to discover independently what could have been discovered through the exercise of ordinary care."[9] The General Assembly, however, "clearly disavow[ed] the common law agency concept of 'fiduciary' "[10] through the passage of BRRETA. OCGA § 10-6A-4 (a) provides that the broker "shall not be deemed to have a fiduciary relationship with any party or fiduciary obligations to any party but shall only be responsible for exercising ordinary care in the discharge of its specified duties." OCGA § 10-6A-7 (a) specifies that "[a] broker engaged by a buyer shall: . . . (2) Promote the interests of the buyer by: . . . (C) Disclosing to the buyer adverse material facts of which the broker has actual knowledge concerning the transaction." Subsection (a) (3) obligates the broker to exercise reasonable care in carrying out her duties.

"An agent is responsible for negligence to his principal."[11] In light of an agent's duty under BRRETA to exercise ordinary care, it is clear that the General Assembly has preserved a buyer's ability to maintain a negligence action against the buyer's agent. In Georgia, a negligence action requires proof of duty, breach of duty, causation, and damages.[12] Therefore, the first issue in this case is whether, con-

---

[6] Id. at 345, n. 1, citing *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 76 (441 SE2d 421) (1994).

[7] Ga. L. 1993, p. 376, § 1. The pre-2000 version of BRRETA applies to this action, and we refer to it exclusively.

[8] (Citation and punctuation omitted.) *Brady v. Dandridge*, 190 Ga. App. 543, 545 (3) (379 SE2d 429) (1989); *Dolvin Realty Co. v. Holley*, 203 Ga. App. 618, 622 (48 SE2d 109) (1948); *Lyle v. Etheridge*, 40 Ga. App. 808 (1) (151 SE 531) (1930).

[9] (Citation omitted.) *Yarbrough v. Kirkland*, 249 Ga. App. 523, 526 (2) (548 SE2d 670) (2001) (question of fact remained as to whether fiduciary or confidential relationship existed between purchaser and mortgage broker).

[10] Sullivan, Brokerage Relationships in Real Estate Transactions: Provide Codification of the Relationships Between Real Estate Brokers and Consumers of Brokerage Services, 10 Ga. St. U. L. Rev. 23, 26 (1993).

[11] (Citation and punctuation omitted.) *Ivey v. Golden Key Realty*, 200 Ga. App. 545 (1) (408 SE2d 811) (1991).

[12] *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982).

strued most favorably toward Ikola, the evidence raises a jury issue as to whether Schoene breached her statutory duties to Ikola. Schoene had a duty under OCGA § 10-6A-7 (a) (2) (C) to disclose material facts of which she had actual knowledge. One method by which the buyer is informed of defects in the property is the sellers' disclosure statement. Therefore, this Code section necessarily implies a duty to provide the disclosure statement to the buyer. In this case, there is evidence that not only did Schoene fail to provide the statements to Ikola, Schoene intentionally withheld them from her. This evidence raises an issue of fact as to whether Schoene breached the duty to disclose material facts affecting the property.

Additionally, the overriding duty of a buyer's agent under BRRETA is to promote the buyer's interests. In this case, there is evidence that Schoene attempted to force Ikola to proceed with an "as-is" sale and actively discouraged her from obtaining a professional inspection. When asked why she did not have the house inspected before closing Ikola replied: "[Schoene] said it wasn't fair to the Mavises to put them out like that and that she had only given us like a seven-day window to get it done in and the walk-through with the family was so close to the end of that seven-day window that she said our time had expired anyway." Ikola further deposed that she "didn't feel it was right, but [Schoene] was supposed to be representing me, and so I felt like she was doing what was right for me also." A jury could find from this evidence that Schoene acted adversely to Ikola's interests and thereby breached the duty to promote them.

We next address the elements of causation and damages. When questioned by Schoene's counsel, Ikola testified that other than ask more questions, she was unsure what she would have done differently had she obtained the property disclosure statements before the closing. However, upon examination by the sellers' attorney, Ikola testified that the sellers' statement that the water in the basement had been redirected after the 1996 storm would have caused her to investigate further. In addition, the record contains several estimates of costs to repair the basement. A jury might find that Schoene caused Ikola to forgo discovering these damages by actively discouraging a professional inspection. Accordingly, "[t]he evidence was sufficient to create an issue for jury determination concerning whether appellees were negligent in representing appellants in the sales transaction."[13]

2. Ikola next contends that the trial court erred in granting summary judgment on her claim that Schoene fraudulently concealed the leakage problem in the basement.

---

[13] (Citation and punctuation omitted.) *Ivey*, supra at 545 (1).

Fraud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie; upon active concealment where the seller does not discuss the defect but takes steps to prevent its discovery by the purchaser; and thirdly a passive concealment where the seller does nothing to prevent the discovery but simply keeps quiet about a defect which(,) though not readily discernible, is known to the seller.[14]

In this case, Ikola alleges that Schoene passively concealed the leakage problem. A passive concealment claim against an agent or seller of defective property requires "evidence that the defect could not have been discovered by the buyer in the exercise of due diligence and that the seller or agent was aware of the problems and did not disclose them."[15] The agent's knowledge of the concealed defect must be actual, not merely constructive.[16] In this case, Schoene averred in an affidavit submitted in support of her motion for summary judgment that she had no knowledge of water leakage in the basement except for a single incident that occurred during a severe storm in 1996 when the sump pump failed due to a power outage. Schoene further averred that she had verbally communicated this information to Ikola when she showed her the home. After Schoene produced this evidence, the burden shifted to Ikola to come forward with evidence that Schoene was aware of recurrent water leakage in the basement. This Ikola did not do. In fact, she recalled that Schoene mentioned that a rain storm in 1996 had caused flooding in a number of homes and that the sump pump was there for that reason. It follows that the trial court did not err in granting summary judgment to Schoene and RE/MAX on Ikola's fraudulent concealment claim.

*Judgment reversed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 25, 2003.

*Philip S. Coe*, for appellant.
*McNally, Fox & Grant, Philip P. Grant, Weissman, Nowack, Curry & Wilco, Todd E. Hatcher*, for appellees.

---

[14] (Citation omitted.) *Hoffman v. Fletcher*, 244 Ga. App. 506, 508 (2) (535 SE2d 849) (2000); see *Wilhite v. Mays*, 140 Ga. App. 816, 817-818 (3) (232 SE2d 141) (1976), aff'd, 239 Ga. 31 (235 SE2d 532) (1977).

[15] (Punctuation omitted.) *Deckert v. Foster*, 230 Ga. App. 164-165 (495 SE2d 656) (1998), citing *Ben Farmer Realty Co.*, supra at 76.

[16] See *Keller*, supra at 527 (2).