A04A1048. RESNICK v. MEYBOHM REALTY, INC. et al.
(604 SE2d 536)

RUFFIN, Presiding Judge.

Following an explosion at her recently purchased home, Frances Resnick sued her real estate agent, Meybohm Realty, Inc. ("Meybohm"), and the seller's agent, Blanchard & Calhoun Real Estate Company ("B&C"), for damages resulting from the explosion. Resnick also alleged that Meybohm breached its duties to her by "suppressing" information about the house and providing false price information. Both defendants filed motions for summary judgment, which the trial court granted. Resnick appeals, and for reasons that follow,

we affirm.[1]

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[2] On appeal from the grant of summary judgment, we review the record de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party.[3]

So viewed, the record shows that Resnick decided to move to Augusta from Toronto, Canada. In January 2000, she began actively looking for a home in Augusta, and she signed an Exclusive Buyer Brokerage Agreement with Meybohm. Resnick's agent at Meybohm, Jackie Andrews, took her to see a house listed for sale by B&C. Evalyn Bennett, a B&C realtor, was present when Resnick visited the home.

Andrews told Resnick that the home was "in absolute[ly] perfect condition," and Bennett "seconded everything [Andrews] said." Resnick walked through the house and noticed a few "problems," which Bennett stated would be fixed. Resnick also detected "a very heavy odor" that smelled as though something was decaying inside the house.[4] When she inquired about the odor, the agents told her that the house "had some dampness under it" and needed a drain.

On January 12, 2000, Resnick offered to purchase the house for the seller's asking price and signed a Purchase and Sale Agreement. The contract contains a merger clause that provides, in pertinent part:

> This Agreement constitutes the sole and entire agreement between the parties hereto and no modification or assignment of this Agreement shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto.

---

[1] Resnick's complaint arguably encompasses additional claims, particularly against B&C. On appeal, however, Resnick focuses on the claims outlined above, and we will only address those claims.

[2] See OCGA § 9-11-56 (c).

[3] See *Ikola v. Schoene*, 264 Ga. App. 338, 339 (590 SE2d 750) (2003).

[4] Following her deposition testimony, Resnick filed an affidavit stating that the odor in the house "was not an odor that was like spoiled food or rotten or decayed material." Without explanation, this affidavit testimony directly contradicts Resnick's prior characterization of the smell in the house. Accordingly, it must be construed against her. See *Miller v. Miller*, 262 Ga. App. 546, 549 (1) (586 SE2d 36) (2003) ("[I]n summary judgment cases where the nonmovant's testimony is contradictory, and no reasonable explanation for the contradiction is offered, the nonmoving party's testimony will be construed against [her].").

The seller accepted the offer and executed the Purchase and Sale Agreement, which was also signed by Meybohm and B&C. On Andrews' recommendation, Resnick hired David Warr to inspect the house. Warr conducted his inspection on January 14, 2000, and prepared an inspection report. Although the report detailed a few problems with the house, it noted no concern with the fireplace or the gas logs, and the report's summary stated that the house was in "good condition."

Resnick returned to Canada shortly after signing the Purchase and Sale Agreement. Because she could not be present for the house closing on February 17, 2000, she gave power of attorney to her nephew, Joseph Rubin, who attended the closing for her. Prior to the closing, Rubin received the inspection report from Andrews and arranged to have some of the problems detailed in the report remedied.

Resnick moved into her new house over several days in late February and early March 2000, but initially did not spend nights there. On March 5, 2000, however, she decided to stay the night, and she turned on her gas stove to make a cup of tea. A few seconds after she ignited the stove's pilot light, she felt the kitchen shake and heard a loud "rumbling." As she walked into the family room to investigate, a marble lamp "shot across the room" and knocked her into the fireplace, injuring her. Other items also "flew" around the room, and she saw flames in the area around the fireplace. According to Resnick, an investigation of the incident revealed that a gas leak in the fireplace caused an explosion in the house.

Resnick sued Meybohm and B&C, alleging that they had breached various duties to her by misrepresenting the condition of the house, concealing evidence of a gas leak, and convincing her to pay an inflated price for the house. The defendants moved for summary judgment, arguing, among other things, that they did not misrepresent any facts or conceal any information regarding the house. The trial court granted summary judgment to both defendants. In particular, it determined that the merger clause in the Purchase and Sale Agreement estopped Resnick from arguing that she justifiably relied on or was induced by any alleged misrepresentations. We find no error.

1. Resnick first argues that the trial court "erred in concluding that a merger clause and a disclaimer waives a claim for breach of professional duty." According to Resnick, both defendants breached a duty to her by: (1) misrepresenting the cause of the odor in the house; (2) concealing the cause of the odor; and (3) failing to investigate the odor's cause. We address each assertion in turn.

(a) *Misrepresentation.* Following discovery of the alleged misrepresentations, Resnick made no effort to rescind the sales contract or

to sue to recover the purchase price. She instead affirmed the contract, seeking recovery for damages. Consequently, Resnick "is 'bound by the contract's terms and is subject to any defenses which may be based on the contract.' "[5] To the extent, therefore, that she claims Meybohm and B&C fraudulently misrepresented the condition of the house, her claim is barred by the sales contract's merger clause, which precludes her "from asserting reliance on [an] alleged misrepresentation not contained within the contract."[6] Since reliance is an essential element of fraud, she cannot show fraudulent misrepresentation.[7]

The merger clause similarly bars Resnick's "breach of professional duty" claim stemming from these same alleged misrepresentations. To succeed on this claim, Resnick must prove that the purported misstatements proximately caused her injury.[8] But she cannot do so without showing that she relied on the misrepresentations, and the merger clause prevents such showing.[9] Moreover, this portion of her professional duty claim is, in essence, a fraud claim.[10] "To permit this . . . claim to survive against [the defendants], when a fraud claim would not, simply exalts form over substance."[11]

(b) *Concealment.* To the extent Resnick alleges that Meybohm or B&C breached a duty by *concealing* a known defect in the gas line, the merger clause does not preclude her claim.[12] Nevertheless, this claim cannot survive summary judgment because the record contains no evidence that the defendants knew about the gas leak before the explosion.

Both Bennett and Andrews testified that they were unaware of the gas leak. Furthermore, nothing in the seller's disclosure statement referenced a problem with the gas lines, and even Resnick

---

[5] *Pennington v. Braxley,* 224 Ga. App. 344, 346 (1) (480 SE2d 357) (1997). See also *Browning v. Stocks,* 265 Ga. App. 803, 806 (2) (595 SE2d 642) (2004) ("When a buyer claims the seller made oral or written misrepresentations outside the sales contract to induce the sale, and elects to affirm the sales contract and sue, the same contractual defenses apply whether the suit is brought as a breach of contract or as a tort claim for fraud. In either case, because the sales contract was affirmed, the buyer is bound by the terms of the contract and subject to defenses asserted by the seller based on the contract.").

[6] (Punctuation omitted.) *Pennington,* supra. See also *Fann v. Mills,* 248 Ga. App. 460, 462-463 (1) (546 SE2d 853) (2001).

[7] See *Pennington,* supra.

[8] See id.

[9] See id.

[10] See id.

[11] Id. at 347.

[12] See *Browning,* supra ("[W]here a buyer affirms the sales contract and sues claiming, not that the seller made extracontractual oral or written misrepresentations about the purchased property, but that the seller actively or passively concealed damage or defects in the purchased property, there is no basis for using an entire agreement clause in the sales contract as a defense to the suit.").

testified that the odor she detected smelled as though "something [was] decaying." According to Resnick, when she asked about the odor, Bennett and Andrews told her that the house had some "dampness" underneath and needed a new drain, a problem that was actually fixed prior to closing. Finally, Resnick's house inspector did not discover a gas leak in the house or a defect in the fireplace gas logs, where the leak allegedly originated. Given the realtors' lack of knowledge, the plausible explanation for an odor in the house, and Resnick's inspector's failure to discover a gas leak, the record does not support a finding of concealment by Meybohm or B&C.[13]

We recognize that the original inspection report produced by Resnick during discovery contains the word "danger" on a page dedicated to the fireplace inspection. Resnick's inspector, however, testified that he did not write the word "danger" on his report, does not know how the word came to be written there, and, in fact, found no dangerous condition in the house. Rubin, who studied the inspection report prior to the closing, also does not remember seeing the word "danger" on it. Similarly, Resnick does not know who wrote the word on the report, and she agreed at her deposition that "danger" was written in an ink different from most of the other writing on the report. As Resnick testified: "It might have been one of the men from the insurance company [who placed the word 'danger' on the report]. I don't know. I don't know who wrote it." She further admitted that the word "danger" might have been written *after* the house closing.

" 'Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.' "[14] Resnick has offered no evidence that Meybohm or B&C knew about a dangerous condition in the house, and the presence of the word "danger" on the inspection report does not raise a question of fact on the issue of knowledge. To find otherwise would improperly permit this claim to proceed based merely on speculation.[15]

---

[13] See *Power v. Ga. Exterminators*, 243 Ga. App. 355, 359-360 (2) (532 SE2d 475) (2000) (trial court properly awarded summary judgment to seller's agent on buyer's fraudulent concealment claim because record contained no evidence that agent knew about termite damage or concealed this information from buyer); OCGA § 10-6A-7 (a) (2) (C) (buyer's real estate broker has a duty to "[d]isclos[e] to the buyer adverse material facts of which the broker has actual knowledge concerning the transaction"). Cf. *Ikola*, supra at 341-342 (1) (questions of fact remained as to whether buyer's agent breached a duty owed to the buyer by intentionally withholding from buyer seller's disclosure statement, which referenced prior water damage in basement).

[14] *Sumter Regional Hosp. v. Healthworks*, 264 Ga. App. 78, 82 (1) (589 SE2d 666) (2003).

[15] See id. at 82-83; *Power*, supra at 359 (1) (fraud claim based on speculation cannot survive summary judgment).

(c) *Duty to investigate.* The record also contains no evidence that Meybohm or B&C breached a duty to Resnick by failing to investigate the source of the odor in the house. As noted above, neither Andrews nor Bennett was aware of the gas leak. And, according to Resnick, both realtors suggested that she have the house inspected to discover any problems. Resnick did so, and the inspector did not detect a gas leak or any other dangerous condition in the house. Pretermitting whether a realtor might, under some circumstance, have a duty to investigate, Resnick has not shown a breach here.[16]

2. Resnick also argues that the trial court erred in concluding that she failed to exercise due diligence to discover the gas leak herself. As we have already found, however, Resnick cannot show that Meybohm or B&C misrepresented any facts, concealed any information, or breached any duty with respect to the gas leak. Thus, regardless of whether Resnick exercised due diligence to discover the gas leak, Meybohm and B&C were entitled to summary judgment on her claims relating to the leak.

3. Finally, Resnick argues that Meybohm breached its duties to her under the brokerage agreement by "suppressing an inspection report that showed problems and dangerous conditions[,] . . . [by] fail[ing] to negotiate a better price for the house[,] and [by] falsely stating that other offers were coming in [on the house]." Although Resnick contends that Meybohm's actions constitute a breach of fiduciary duty, a real estate broker owes no fiduciary duty to a client.[17] Instead, the broker is "only . . . responsible for exercising reasonable care in the discharge of [the broker's] specified duties."[18]

As an initial matter, the record belies Resnick's claim that Meybohm "suppressed" the inspection report. Joseph Rubin testified that Jackie Andrews gave the report to him, as Resnick's representative, prior to the house closing. Rubin further testified that he was responsible for having the problems noted in the report fixed. Given this testimony, a jury could not find that Meybohm "suppressed" the inspection report.

With respect to negotiating a better price for the house, a buyer's broker is obligated to promote the buyer's interests by "[s]eeking a property at a price and terms acceptable to the buyer."[19] Resnick, however, has not offered any evidence that Meybohm or Andrews

---

[16] Cf. *Ikola,* supra at 342 (questions of fact remained as to whether buyer's agent breached overriding duty to promote buyer's interests in purchase of house by attempting to force buyer to accept house "as is" and by actively encouraging buyer not to obtain a professional inspection).

[17] See OCGA § 10-6A-4 (a); *Ikola,* supra at 341.

[18] OCGA § 10-6A-4 (a).

[19] OCGA § 10-6A-7 (a) (2) (A).

breached this duty. In her complaint, Resnick alleged that Andrews "falsely" told her that other offers had been made on the house and that she would need to pay the seller's full asking price to purchase the home. Resnick later explained at deposition that, when she asked Andrews whether she could make a lower offer, Andrews responded that Bennett "had . . . three or four offers on the property" for the asking price. Andrews also told Resnick that she could not secure a contract for less than the asking price because other people were willing to pay this amount.

Although Resnick claims that Andrews lied about the competing offers and the need to pay full price for the house, she has pointed to no evidence of such deception. She testified by affidavit that, several months before she became interested in the house, Bennett offered to sell it to another party for an amount well below the asking price, and Andrews knew about the offer. This testimony appears to be nothing more than rank hearsay and speculation, which cannot create a question of fact to defeat summary judgment.[20] Furthermore, even if such testimony can be considered, it does not show that Andrews lied about the existence of competing offers several months later. Resnick's affidavit testimony also does not support her apparent claim that, if she had offered a lower amount, the seller would have accepted the offer.

Resnick has presented no evidence that Andrews misrepresented the circumstances surrounding the house price or failed to exercise ordinary care in representing her. In addition, she has not shown that any breach of duty by Andrews or Meybohm caused her to pay a higher price for the house. Accordingly, the trial court properly granted Meybohm summary judgment on this claim.[21]

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED JULY 21, 2004 —
RECONSIDERATION DENIED SEPTEMBER 9, 2004 — 

*Allen W. Johnson*, for appellant.

---

[20] See *Harrell v. Fed. Nat. Payables*, 264 Ga. App. 501, 504 (3) (591 SE2d 374) (2003) (" 'All hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment.' ").

[21] See OCGA § 10-6A-7 (a) (2) (A); *Ikola*, supra at 341 (to maintain a negligence action against her real estate agent, a buyer must present "proof of duty, breach of duty, causation, and damages").

*Glover & Blount, Gary A. Glover, Fulcher & Hagler, J. Arthur Davison, Robert T. Homlar,* for appellees.